Chalk v. T-Mobile Good morning, Your Honors. My name is Karen Reed, and I represent Plaintiff Appellants Ellen Chalk and Paul Stewart. And at the outset, I want to apologize. I'm suffering from the last vestiges of a nasty cold, and I may need to ask for you to repeat some questions. But on my part, I promise not to sniffle or cough in the microphone to the best of my ability. That's all right. Thanks. We all have problems with our voices. If it pleases the Court, the thrust of appellants' argument can be summed up as follows. While the Honorable Anna Brown attempted to predict how the Oregon State Appellate Courts would apply traditional contract law to determine the unconscionability of the terms and conditions of this arbitration agreement that was contained in a consumer contract of adhesion, it is clear from the Oregon Court of Appeals decision in Vasquez-Lopez v. Beneficial Oregon, Inc. that several of her rulings are not consistent with Oregon State law. Did that case come down after her decision was made? Yes, it did. It came down several months after. So it's Vasquez-Lopez v. Beneficial Oregon, Inc. And that determined that it was unconscionable substantively if you had a bar on class action cases? Under certain circumstances, yes. Including these circumstances? Yes. And that's your argument, right? That is the simple summary of it. But if you would like, I can go into some further details with regard to how this is similar to Vasquez-Lopez and the specific facts of this case should warrant the same conclusion. Well, it's the same summary that Vasquez-Lopez says. In short, the class action ban is unilateral in effect, and more significantly, it gives defendant virtual license to commit with impunity millions of dollars worth of small-scale fraud. And, of course, there were facts in the case. But in general, what is it about this case that would take it out of the general rule that you can't bar class actions? Well, actually, there's nothing that would take it out of the general rule, that the class actions were barred in small-consumer cases. That is correct. Probably that question is better addressed to your opponent. Okay. All right. Well, if you're not interested in additional information on the class action ban, I do want to touch on the question. Don't take from my questions. Okay. Sorry about that. Others are uninterested. No. Well, now, there was a question about severing out the class action question and letting the rest of the arbitration, considering the rest of the arbitration agreement binding. While Anna Brown chose not to sever out the damages, the limitation on damages issue, I understand why she made that decision, because that's something that could be remedied in the context of an arbitration. But when you are now looking at at least two clauses that are unconscionable and appellants assert that there are two additional clauses that evidence will support are unconscionable, both the discovery limitations and the excessive cost, the cost provisions, then I would assert that it is not severable. And you would have to look at the Vasquez-Lopez standard for severability, which is if you have an arbitration agreement that is so permeated with significant defects where merely excising the offensive substantive provisions still couldn't cure the unfairness, you're not going to be able to sever it. And so I say in this circumstance with four alleged unconscionable provisions that this would not be recoverable in arbitration. Why don't we hear from the other side and see if you have something that you need to rebut? Fabulous. Give your voice a rest. Morning, Your Honors. John O'Malley for Defendants and Respondents. Mr. O'Malley, let me just start with one preliminary question, which was to address Judge Goodwin's last question. Your brief says the class waiver provision cannot be severed. Correct, Your Honor. Under the terms of the contract, the class action waiver provision cannot be severed. Okay. Thank you. With regard to the issues here, what I'd like to do is step back a little bit and talk about the Vasquez-Lopez decision and the Motzinger decision that we cited in our letter of April 6, 2007, and was cited in the reply briefs. I think what's important to note here is that, actually, if you look at the Motzinger decision, Judge Brown really hit the nail on the head in terms of what Oregon law was going to do. The Motzinger decision is very important because that is a decision that discussed at length Oregon law with regard to unconscionability and talked about how you cannot have a per se ban of any type of contract clause. It also talked in detail and has a quote that says, in those rare instances in which Oregon courts have declared contractual provisions unconscionable, there existed serious procedural and substantive unfairness. Now, that quote follows up on the best case from the Oregon Supreme Court, which, again, was a decision that looked strongly at the procedural unconscionability of the provisions in question. If you look at Vasquez-Lopez, I would submit that if you took a spectrum of decisions that would consider the unconscionability of a class action waiver or pretty much any other provision, that case would stand on the far right side of the spectrum, whereas our case, the Chock case, would stand much closer to the far left of the spectrum. In Vasquez-Lopez, that case was decided after a full trial and a decision basically indicating that the defendants had defrauded the plaintiffs, they had lied to them, they had cheated them, and punitive damages had been imposed. Okay? I submit to you that when you go up to the Oregon court of appeal at that point in time, and the other side is essentially at that juncture making a technical argument that, yes, we basically were thieves in our dealings with the plaintiffs, but despite that, we have a technical argument that maybe the initial decision on the class action waiver was an error, that that is a different set of circumstances than what we have here. Well, it's not so unusual to have a State declare a class action ban invalid. California has the same rule, and it doesn't have any limitations on it. It just says you can't have a class action ban in this type of a contract. Your Honor, I've read your decision in the Schroer case, so I am aware of that. And actually, I am from California, so I'm doubly aware of that. However, I would submit to you that if you look at the Vasquez-Lopez case, that is not what that case says. That case specifically indicates that you need to look at the unique facts of every case in applying the unconscionability doctrine. The unique facts here, as expanded upon by the Monsinger case, are that all of the contractual language was there. There's no evidence of procedural unconscionability. There's no evidence of essentially anything else other than a bargain between two parties with approximately $700 at stake and an arbitration provision that says the plaintiffs can pay $25 to get this thing arbitrated, or if there's a problem with that and a hardship, that fee can be waived, but they can go forward with a very quick, easy, efficient resolution where they can get their recovery if they're entitled to it while expending no more than $25 or potentially less. I think that circumstance pales in comparison to some of the other decisions that are out there, and in particular, seeing as this is an Oregon issue, the best case where there was a $6 NSF fee that was essentially at issue is instructive as to what the Oregon Supreme Court would do, where, again, that case wasn't really concerned about any type of difference in bargaining power between the bank, which obviously had a much more bargaining power than its depositors, and the same goes in the Monsinger case, where Oregon, as opposed to other jurisdictions, enforces contracts of adhesion regularly. In fact, the Monsinger case notes it's pretty much, in fact, a deal of life. Oregon cases on that really are saying it as a practical matter. All employee-employer contracts are adhesive because it's a take-it-or-leave-it deal. You want to work for us, you sign this contract, and Oregon courts have said that that kind of adhesion is so endemic and so part of the whole environment that that will not knock out the contract by itself. But then if there's some surprise ambush or other evidence in there, well, then you can knock it out through procedural contention, though. I understand, Your Honor. But if you go back to the Best case and the May case, those cases reaffirm the same doctrine with regard to contracts of adhesion, not basically trumping everything. And in this case, I would submit that not only is there no evidence of surprise, the plaintiff signed a document that literally says there's a class action waiver. They also said we've read the T-Mobile rules, okay, which were in the box and otherwise given to them. They've acknowledged that in writing, and basically that is a presumption, if not a judicial admission, that that had occurred. Also, as we noted before, we need to keep in mind here that the supposed class action is based on representations that were made before the product was purchased. And the product worked. It worked for three weeks, and then, you know, we have no evidence of what happened at that point in time. But somehow, what is that basically a universal card that you can insert in your computer to get Internet access somehow wouldn't fit in the computer. The plaintiffs have tried to suggest that, oh, we need these experts and other things to make the case. I mean, the fact of the matter is, as the Court, I'm sure, is aware, Sony Ericsson and TuneMobile are not the only people that sell these universal cards that go into a machine. There are innumerable manufacturers of those products. And if you went down to small claims court, which, again, under the clause in question is something they were entitled to do, you can basically just have someone go in there. And if it's the case that all these other ones go in and the Sony Ericsson one does not, that's your case. It's that simple. I mean, there's no hardship in doing that. There's no experts that are required. Our position, as we noted before, is Oregon law does not provide for a per se ban on a contract clause, particularly one of this nature. It is a misreading of the Vasquez-Lopez case to suggest that that case holds that you can have a per se ban. And on the facts of our case, which are about as favorable as you can get, it's our position that you would need to hold that there is a per se ban for the defendants to lose. Is there a bright line distinction between the facts in this case and the Vasquez-Lopez? Yes, there is, Your Honor. The bright line distinction is the fraud that was perpetrated by the defendants, the clear evidence, not to mention overwhelming proof of procedural unconscionability. You don't know about that until after you've had your hearings and we're talking about getting into court. Sorry. Vasquez-Lopez, those plaintiffs didn't even speak English, and the evidence was undisputed. They relied on the representations made by the defendant in question that they could still go to court after arbitration. So, and the amount of money at issue there, as Judge Reinhart noted before, was basically a $50.00. $50.00 is what is referenced in the quote in Vasquez-Lopez. Here we have $700.00. In the California cases, at least, we've said that up to $1,000.00 is all. That is true, Your Honor. Yeah. That is true. I just reread the discussion of class action in Vasquez-Lopez, and I don't see anything that limits it. Maybe you would limit it if, under the facts, it was a $10,000.00 claim, or maybe even over a $1,000.00 claim. But what is it in the class action discussion in Vasquez-Lopez that bases the decision on anything other than the class action provision? Well, the indication in Vasquez-Lopez that is a distinguishing characteristic is the fact that that case specifically sets forth that each case needs to be decided on its own unique facts, which means that that decision on class action waivers is not universal. And had there been different facts and different circumstances before the Court at that time, that decision may very well have been different. There was also, I think, undisputed evidence that it was at least $1,000.00 for the plaintiffs to even go to arbitration, which is not at issue here. Here we have a very unique circumstance where we don't have any of the evidence that was in Vasquez-Lopez, and we have a lot more of the evidence that was in the Monsinger case, which found that there was no unconscionability. So I understand that there are some prior decisions in California that do not accord with the circumstances here, but here we have an Oregon law issue, and contrary to what counsel has said in her reply brief, there is not a trend across the nation of enforcing of not enforcing class action waivers. In fact, I'm sure Your Honors are aware of the Gay case from the Third Circuit last year under the law of Virginia. In addition, I want to make one more point. Oregon uniquely has the Uniform Arbitration Act that it has enacted in Oregon. And if you did a survey of the states that have also enacted the Uniform Arbitration Act, Texas being one, Maryland being another, Tennessee, Kentucky, those states, you will find they uphold class action waivers in those states. And I would submit to you that one of the reasons why is because the policy of the Uniform Arbitration Act, once it's enacted in your state, is something that those courts take into account in looking at unconscionability. Could it be that the courts of the Northwest are more enlightened than Texas and those other courts? That could always be, Your Honor. That actually could always be. I would submit, though, that based on the Oregon Supreme Court decisions, that those indicate that actually on the facts of this case, the unique facts of this case, they would affirm the decision of the district court and uphold. Thank you. Thank you. You were correct. I have a few rebuttal points. First of all, I would like to say that contrary to counsel's, responding that there are very distinct differences between Vasquez and Lopez that makes it very distinguishable from the Chalk case versus those that aren't so distinct where it might be more similar to Motzinger, the appellants come up with a different and exact opposite view. Vasquez-Lopez, without getting into whether or not this promotes an absolute ban, under the facts of the Chalk case, we are looking at, and Vasquez-Lopez certainly says and bans any class action where there is going to be the ability to commit small-scale fraud on cases where there is either a small amount of recovery or when the costs, the possible and potential costs could exceed the recovery, acting as a chilling effect to pursuing consumer class actions. While in the Motzinger case, this was an employment case dealt with sexual harassment, we weren't talking small dollar amounts in that case. So that is a very important factual distinction between the two cases. With regard to procedural unconscionability, as I'm certain the Court knows, that Vasquez-Lopez very clearly states that procedural unconscionability is not required. Substantive, it is part of the analysis, obviously, but under the facts of each individual case, the Court needs to weigh procedural and substantive unconscionability with the only thing being required is substantive unconscionability, which certainly exists in the Chalk case under the facts of this case. In other words, you're saying if we find substantive unconscionability, we don't have to reach the question of whether a person was sleepwalking when they signed the contract and so on. That is correct. With regard to no evidence of procedural unconscionability on the facts of this case, I would point to, and I believe, counsel can correct me if I'm wrong, that he was referring to the document signed by Appellant Paul Stewart that's located at pages 10 and 11 of the excerpt of record. In this document, it states that my rate, it says, you know, I've been provided this document, I've been provided that document, and I've been provided mobile terms and conditions and my rate plan information. The T, mobile terms and conditions, are in my welcome guide or were otherwise provided to me at the time of sale. Now, my rate plan information was provided to me at the time of sale, period. By signing, I acknowledge that I have received and read this document, period. The T, mobile terms and, well, maybe that is a comma. I thought it was a period. I do apologize. I can't tell from my copy, comma, the T, mobile terms and conditions and my rate plan information. The T, mobile terms and conditions extend for approximately 35 pages, including print like this, and one thing that they do not contain that was not in front of them are the terms of arbitration. This document is at ER 21. The terms and conditions state very specifically that you agree that any claim submitted to final binding arbitration with the American Arbitration Association is under its published wireless industry arbitration rules, which are a part of this agreement by reference and are available by calling AAA or going to their website. It is in that document that is not and was not in front of appellants when they signed this contract, and that proof and evidence is right here in their own document that contains the restrictions on damages, contains the restrictions on discovery. So procedurally there was not full information in front of the appellants. I believe those are the points that I wish to address. Are there any other questions? All right. Thank you. Thank you. Oh, sure. See, the best way to handle this would be to have the company just provide if you have any problems, please call me, call us, and then people call and then they'll ask you what language you want, and you push a button, and then you go to about five buttons, and then you get music, and then you're told how valuable a customer you are. And then they just let you kind of listen to music for a half hour, see, soothing music, put you to sleep. There you go. And then you forget about it. You know, you say, life's too short. And that's a much better way to handle these problems. Well, you're right. I just wanted to make one point, which is... Have you thought about that? I've thought about it. I mean, I have to tell you that, you know, I called a phone company. I wanted to find out about my bill. How can I save some money because I don't understand all these things. And I got the same thing, you know. I held on for 45 minutes, and I just gave up. I was looking around for a place to surrender, but I couldn't even find anyone to do that. So that's the best way for business to handle these problems. I've called my cable company. I identify with the issues. And then you have them forwarded to someone in another country, and then they'll tell you, well, you know, I don't know about that. So go ahead. Your time's almost up. Yeah. I just wanted to make one more remark, which is actually, my understanding is that under the terms that counsel was identifying in her rebuttal of the rules in question, if you're seeking injunctive relief, which they clearly are, as set forth in the complaint, you actually have to have an agreement with T-Mobile for those rules to apply. So anything that she's trying to draw from those rules doesn't apply. You have to do what? You have to have an agreement for what? T-Mobile would have to agree for those rules to apply, as well as the plaintiffs would have to agree for those rules to apply if they're seeking injunctive relief. That's what they said. Yeah. We can read those. Yeah. Okay. Thank you. Okay. All right. Thank you. This matter is submitted. And now we come to number three, Gray v. Rent-A-Center West.
judges: Goodwin, Pregerson, Reinhardt